The Township of CHATHAM v. The Executors of SAMUEL CANFIELD, deceased.

CERTIORARI TO THE COMMON PLEAS OF MORRIS.

What circumstances and facts are sufficient proof of the ownership of a slave by a testator to make the executors liable for his maintenance, under *Stat. Rev. Laws* 375, *Sec.* 26. (See statement of facts in this case.)

The township of Chatham, the plaintiffs in certiorari, had brought an action of debt before a justice of the peace, against the executors of Samuel Canfield, to recover the amount of moneys laid out and expended by the said township, for the support of a negro named William, alleged to have been the property of the said Samuel Canfield, deceased. The declaration contained two counts, one for money paid and expended, and the other for board and lodging. On the trial of the cause before the Justice, a judgment was rendered in favor of the township. From this judgment an appeal was taken to the Common Pleas, by whom the judgment of the justice was reversed ; and to review this judgment of the Common Pleas, this certiorari was brought. The facts in this cause as they appeared by the state of the case agreed on between the parties were as follows :—"The plaintiffs gave in evidence an original order, made by one of the justices of the peace of the county of Morris, on the overseers of the poor of the township of Chatham, to pay to the said negro William, 'one dollar per week for and towards his support and maintenance.' They also gave in evidence a notice from one of the overseers of the poor of the township of Chatham, directed to the defendants, bearing date March 20th, 1821; informing the said defendants, 'that negro William, formerly belonging to their testator, was a pauper and unable to support himself, and that unless they

Chatham *v.* Canfield.

immediately came and provided for his maintenance they should consider them responsible for his support;' which notice was admitted to have been duly served on the defendants on the 'day of the date thereof. And also a transcript of the record of the will of Samuel Canfield, deceased, which said will contained in it the following clause; ' I hereby give and bequeath to my sons John and Benjamin, two thirds of the residue of my real estate, provided they indemnify, from any charge, the rest of my heirs, for the maintenance of *my negro William;* but if they neglect or refuse to comply therewith, I hereby empower my executors to sell and convey as much of their land as will indemnify said heirs.' It further appeared in evidence that the said negro William was born in the family of one Thomas Eckley, formerly residing in the township of Chatham, in the county of Morris—that his mother was the slave of the said Thomas Eckley—that he was a cripple from his birth, and although able to do some light work, never earning his subsistence, that after the death of said Eckley, about twenty-five years ago, and when said negro was about twenty years of age, he went to live with Samuel Canfield, under some agreement between the executors of said Eckley and said Samuel Canfield, but whether by sale or otherwise was not positively proved.

" The defendants proved that *it was reputed* that Canfield received sixty dollars with the said negro from the executor of Eckley—also, that *it was reputed* in the neighborhood that the executor of Eckley had hired Canfield to keep said negro. This testimony was objected to as incompetent. It further appeared that the said negro William remained in the family of the said Samuel Canfield, deceased, and engaged in his service until the time of his death, which took place in the year 1811. That said Canfield died, leaving a good farm of upwards of one hundred acres, and a good stock of farming utensils. He left a large family of children. John the oldest son, was at the time of his father's

Chatham v. Canfield

death about thirty years of age. It further appeared, that after the death of Samuel Canfield, the negro William was kept for some time by his sons John and Benjamin, alternately, Benjamin kept him about one year, he then removed to the western country, and agreed with John, and gave him a sum of money to take and keep negro William : John was then in good circumstances, William lived in the family of John, and in his service until the spring of 1821, when he was thrown upon the township of Chatham. John died about a month afterwards ; he died poor, and kept the negro as long as he was able. It further appeared, that since the aforesaid notice was served on the defendants, and before the commencement of this action, the township of Chatham, had paid the full amount of the sum (for which the justice rendered judgment,) for the relief and maintenance of the said negro William, and that the said sum was no more than a reasonable compensation for the same." Upon this statement of facts, *W. W. Miller,* for the plaintiffs in certiorari, moved to reverse the Judgment of the Court of Common Pleas upon two grounds. 1. Because the Court of Common Pleas admitted illegal evidence, viz: hearsay and reputation, as to the nature of the transfer of the negro from Eckley to Canfield. 2. Because Canfield was to be considered in law under the facts in this case, as the owner of negro William, and that therefore the plaintiffs were clearly entitled to a judgment in their favor.

*Frelinghuysen,* contra.

*Per curiam.* The court are of opinion, that negro William was, according to the evidence in the cause, the slave of Samuel Canfield, and therefore the judgment of the Court of Common Pleas ought to be reversed.

Judgment reversed.